UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

EUGEN BEJARANO SADER, a Venezuelan citizen and resident

    Plaintiff,

v.

JOSE M. PADRON, a Florida resident

    Defendant.

_____/

## COMPLAINT

Plaintiff, Eugen Bejarano Sader ("Bejarano") hereby sues Jose M. Padron ("Padron") and state as follows:

### PARTIES, VENUE, AND JURISDICTION

1. This is an action for breach of contract, breach of fiduciary duty, accounting, unjust enrichment, and fraud.

2. The Court has subject matter jurisdiction under 28 U.S.C. § 1332 insofar as Plaintiff is not a citizen or resident of Florida and Defendant is a citizen and resident of Florida and the amount in controversy exceeds $75,000.

3. Bejarano is a citizen and resident of the Bolivarian Republic of Venezuela.

4. Padron is a resident of Miami-Dade County, Florida.

5. Venue of this action is appropriate in this district insofar as the real property giving rise to the Plaintiff's claims is located in Miami-Dade County, Florida, and the conduct and transactions at issue occurred in Miami-Dade County, Florida.

1

6. All conditions precedent to bringing this action have occurred, been satisfied, or waived.

## STATEMENT OF FACTS

7. In 2013, Bejarano decided to acquire investments in South Florida including acquiring an interest in an automobile dealership and real property.

8. At that time, Bejarano maintained a personal friendship with Defendant, Padron, and therefore sought out Padron's assistance in facilitating and executing the investments. Of particular interest to Bejarano was the fact that Padron was a licensed real estate broker which would facilitate his acquisition of investment property in South Florida.

9. Bejarano asked Padron to assist him acquiring investment property in South Florida, and Padron agreed. Padron became Bejarano's agent in this regard.

10. In addition, Bejarano agreed to enter into a partnership with Padron for the purpose of building and owning a Honda dealership. Bejarano and Padron entered into an implied partnership agreement, and Padron became Bejarano's partner in connection with the Honda dealership investment.

11. Bejarano reposed his trust and confidence in Bejarano to handle his financial matters in connection with the acquisition of investment property in South Florida and ownership and building of a new Honda dealership. Padron knew that Bejarano reposed his trust and confidence in him and accepted this trust and confidence.

*JM MotorSports, LLC*

12. Being aware that Bejarano was seeking to invest in South Florida, Padron suggested that Bejarano and he jointly incorporate a Florida entity which would own and

2

operate a Honda dealership. Padron incorporated an entity for this purpose called JM MotorSports, LLC, ("JM MotorSports") and advised Bejarano that each of them was the owner of a Fifty Percent (50%) member interest in the company.

13. As a condition for Bejarano ownership of a 50% interest in JM MotorSports, Padron required that Bejarano contribute $800,000.00, which according to Padron was to be utilized for costs associated with obtaining the dealership rights from Honda as well as the construction of the facility. Pursuant to Padron's instructions, Bejarano made two wire transfers to Padron totaling of $600,000.00. The initial wire transfer of $300,000.00, was sent by Bejarano to Padron on October 31, 2013. A second wire transfer for $300,000.00, was sent by Bejarano to Padron on May 31, 2015. Both wire transfers were made to accounts held in the name of Padron. Padron accepted and kept both wire transfers and advised Bejarano that they were being applied towards the Honda dealership project.

14. Additionally, in 2014, Bejarano assigned to Padron for the benefit of JM MotorSports a portion of the proceeds of the sale of a Lambourgini Hurricane automobile totaling $200,000.00. Padron himself handled the sale of this automobile on behalf of Bejarano which sold for $272,850.00

15. In late 2015, Bejarano became concerned with the continued stated delays by Padron in the development of the Honda dealership and demanded that Padron provide him with documents which evidenced his 50% ownership interest in JM MotorSports as well as an accounting and financial reports for the company. Despite numerous requests, Padron failed to provide Bejarano with the requested documents and information and is now denying that Bejarano owns an interest in JM MotorSports.

3

16. Bejarano, surprised by Padron's denial of his ownership in JM MotorSports, demanded in November 2017 that Padron return the $800,000.00 Bejarano had given him personally for this venture but Padron refused to do so.

*SLS Lux Apt. 1901*

17. In 2014, Padron advised Bejarano of an opportunity to acquire a unit in a new building to be constructed called SLS Lux and strongly urged Bejarano not to pass up this opportunity. Given that Padron was a licensed real estate agent and professed to have extensive knowledge of the real estate market in South Florida, Bejarano followed his advice and decided to acquire a unit. Padron coordinated and accompanied Bejarano to the meetings in Miami with the developer. Padron also told Bejarano that he planned to acquire another unit in the building, unit 2107. Acting as Bejarano's agent, Padron assisted Bejarano in acquiring an investment property in SLS Lux.

18. In connection with acquiring the SLS Lux apartment, Padron informed Bejarano that he needed to transfer funds to Chicago Title Insurance Co. (the "Chicago Title") who would serve as the closing agent. Bejarano proceeded to make five separate transfers to Chicago Title as deposits towards the purchase of Unit 1901 in the SLS Lux condominium: (a) $100,000.00 on May 25, 2014, (b) $100,000.00 on June 3, 2014, (c) $100,000.00 on July 13, 2014, (d) 99,990.00 on December 10, 2014, and (e) $99,990.00 on November 8, 2016.

19. These payments represented the 50% deposit required by the condominium developer.

20. Padron advised Bejarano that Unit 1901 would be acquired initially in Padron's name so as to facilitate the process and that he would later transfer title to a

Florida limited liability company which he would create for Bejarano and which would be owned solely by Bejarano.

21. In November 2017, Bejarano demanded that Padron place the apartment in the name of a limited liability company owned by Bejarano or, alternatively, in Bejarano's name. Padron refuses to do so and also refuses to return to Bejarano the $500,000.00 he paid towards the purchase of Unit 1901 at the SLS Lux Condominium.

22. The Plaintiff has agreed to pay the undersigned law firm a reasonable attorneys' fees for their services.

### COUNT I – BREACH OF PARTNERSHIP CONTRACT
(Regarding Honda dealership investment)

23. Plaintiff re-alleges paragraphs 1 through 8, 10 through 16 and 22 above.

24. The Parties formed an implied partnership agreement as a result of the parties' conduct.

25. Specifically, Plaintiff invested $800,000.00 for the purpose of acquiring the rights from Honda to own and operate a Honda dealership and construction of the facility.

26. The agreement between the parties was that Plaintiff and Defendant each had a 50 percent interest in the ownership of the Honda dealership and had a right to share profits and duty to share losses 50/50.

27. Both parties exercised control or had right of control regarding the ownership and operation of the Honda dealership.

28. With respect to the Honda dealership investment, the Defendant always referred to the relationship between the parties as a "partnership."

5

29. Pursuant to the agreement between the parties, Plaintiff would invest a total of $800,000 for a 50 percent interest in the Honda dealership.

30. Plaintiff performed under the agreement and transferred $800,000.00 to the Defendant in accordance and in compliance with the parties' agreement.

31. Defendant breached the agreement by failing to acquiring the rights to a Honda dealership, and construct a facility, and has refused to account for the $800,000.00 sent by the Plaintiff to the Defendant for the sole purpose of owning and operating a Honda dealership.

32. As a direct result of Defendant's breach, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory damages, plus pre- and post-judgment interest, court costs, and such other relief as the court may deem just and proper.

### COUNT II – BREACH OF FIDUCIARY DUTY
### (Regarding Honda dealership investment)

33. Plaintiff re-alleges and incorporate as if fully set forth herein paragraphs 1 through 8, 10 through 16 and 22 above.

34. This is an action against Padron for violating his fiduciary duties to the Plaintiff.

35. Padron participated in a partnership relationship with the Plaintiff in which the Plaintiff placed trust and confidence in Padron. By acting as the Plaintiff's partner, Padron accepted the trust placed in him and in turn owed the Plaintiff a duty of loyalty.

36. Among other duties, Padron advised the Plaintiff on investing in an opportunity to own and operate a Honda dealership. Padron also advised the Plaintiff that

6

in order to acquire a 50 percent interest in the ownership of a Honda dealership, he would have to invest $800,000.00. Plaintiff sent and Defendant accepted $800,000.00 for the sole purpose of acquiring the rights to own a Honda dealership and construct a facility.

37. As Plaintiff's partner, Padron was obligated to protect the Plaintiff and discharge his duties in good faith and in a manner that served the best interest of the Plaintiff.

38. Specifically, Padron was obligated to avoid self-dealing and to remain loyal to the Plaintiff, putting the interests of the Plaintiff before his own and refrain from exploiting his relationship with the Plaintiff for his own personal benefit.

39. Padron was grossly negligent and reckless in the performance of his fiduciary duties to the Plaintiff, and put his own interest above that of his partner.

40. While acting as Plaintiffs' partner, Padron knowingly engaged in self-dealing by misinforming the Plaintiff as to the purpose of the $800,000.00, and using the funds that were supposed to be used for construction and operation of a new Honda dealership for his sole benefit.

41. Additionally, Padron violated his duty of loyalty by making misrepresentations regarding his true intentions in connection with the Plaintiff's investment in a Honda dealership.

42. As a result of Padron's breaches of his fiduciary duties owed to the Plaintiff, Plaintiff has been damaged in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages and monies incident to equitable relief for breach of fiduciary duty, compensatory damages, plus pre- and

post-judgment interest, court costs and attorneys' fees, and such other relief as the court may deem just and proper.

### COUNT III-UNJUST ENRICHMENT
**(Regarding Honda dealership investment)**

43. Plaintiff re-alleges and incorporate as if fully set forth herein paragraphs 1 through 8 and 22 above.

44. This is an action against Padron for unjust enrichment.

45. Bejarano transferred to the Defendant over $800,000.00 for the sole purpose of acquiring rights to own and operate a Honda dealership and to construct a facility for same.

46. The Plaintiff conferred a benefit to Padron in that he sent $800,000.00 to him for the purpose of investing in the ownership of a Honda dealership, but has failed to account for the use of the $800,000.00.

47. Upon information and belief, Padron has used the $800,000.00 for purposes other than those intended, including for personal expenses. Despite Plaintiff's demand for return of the $800,000.00, Padron fails to return the investment funds or account for the use of the funds. Circumstances are such that it would be unjustifiable for Padron to retain the $800,000.00 sent by Plaintiff for the ownership and operation of a Honda dealership.

**WHEREFORE,** Plaintiff demands judgment against Padron for damages, plus pre- and post-judgment interest, reasonable attorneys' fees and costs incurred in this action, and such other relief as the court may deem just and proper.

## COUNT IV – FRAUD
### (Regarding Honda dealership investment)

48. Plaintiff re-alleges and incorporate as if fully set forth herein paragraphs 1 through 8 and 22 above.

49. This is an action against Padron for fraud.

50. Acting as the Plaintiff's partner in connection with the Honda dealership investment, Padron made misrepresentations to the Plaintiffs concerning material facts or intentionally concealed material facts from the Plaintiff. Specifically, Padron made misrepresentations regarding his intentions with the use of Plaintiff's $800,000.00 investment in the Honda dealership partnership knowing that he would not use the $800,000.00 investment to acquiring the rights to own and operate a Honda dealership or construct a facility, but would instead use Plaintiff's $800,000.00 for his personal benefit.

51. Padron knew that his misrepresentations were false and omissions were material to Bejarano, and made the misrepresentations and omissions for the sole purpose to induce the Plaintiff to transfer over $800,000.00 to Padron.

52. Plaintiff relied on the misrepresentations of Padron, and had Plaintiff known of Padron's omissions would have never transferred $800,000.00 for the purported acquisition of a 50 percent ownership of a Honda dealership.  As Plaintiff's partner, Plaintiff expected that Padron would disclose all material facts regarding the Honda dealership investment, and the use of the $800,000.00 investment.

53. As a result of Padron's fraud, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands judgment against Padron for damages, plus pre- and post- judgment interest, reasonable attorneys' fees and costs incurred in this action, and such other relief as the court may deem just and proper.

### COUNT V – ACCOUNTING
**(Regarding Honda dealership investment)**

54. Plaintiff re-alleges paragraphs 1 through 8, 10 through 16 and 22 above.

55. The Parties formed a partnership agreement for the purpose of the 50/50 percent ownership of a Honda dealership.

56. In connection with their partnership agreement, Defendant agreed to maintain detailed supporting documentation for every cost he incurred in connection with the partnership, and provide all the accounting of the partnership.

57. As Plaintiff's partner, Padron owes fiduciary duties to Plaintiff.

58. Accordingly, Padron has an obligation to accurately account for expenses of the partnership to its partner, and specifically account for the use of the $800,000.00 sent by the Plaintiff to Padron for the sole purpose of acquiring rights to own and operate a Honda dealership and construct a facility.

59. Defendant refuses to return the Plaintiff's $800,000.00 investment, and continues to fail to fully and properly account to Plaintiff for the use of his $800,000 investment.

60. Plaintiff has demanded a full and proper accounting from Padron, but he has failed to provide a full and proper accounting to Plaintiff.

**WHEREFORE**, Plaintiff requests judgment against Defendant requiring a full and proper accounting be provided to Plaintiff, and awarding such other relief as the court may deem just and proper.

### COUNT VI – BREACH OF FIDUCIARY DUTY
### (Regarding SLS Lux investment)

61. Plaintiff re-alleges and incorporate as if fully set forth herein paragraphs 1 through 9, 11, and 17-22 above.

62. This is an action against Padron for violating his fiduciary duties to the Plaintiff.

63. Padron participated in a relationship with the Plaintiff in which the Plaintiff placed trust and confidence in Padron. By acting as the Plaintiff's agent, Padron accepted the trust placed in him and in turn owed the Plaintiff a duty of loyalty.

64. Among other duties, Padron advised the Plaintiff on investments in the United States, specifically the acquisition of an investment property and assets in Florida.

65. While acting as Plaintiff's agent, Padron was obligated to protect the Plaintiff and discharge his duties in good faith and in a manner that served the best interest of the Plaintiff.

66. Specifically, Padron was obligated to avoid self-dealing and to remain loyal to the Plaintiff, putting the interests of the Plaintiff before his own and refrain from exploiting his relationship with the Plaintiff for his own personal benefit.

67. Padron was grossly negligent and reckless in the performance as agent for the Plaintiff, and put his own interest above that of his principal, the Plaintiff.

68. While acting as Plaintiff's agent, Padron knowingly engaged in self-dealing and violated his duty of loyalty by encouraging the Plaintiff to acquire a unit at the SLS Lux, misinforming the Plaintiff as to his intentions regarding the ownership of the unit and that he would never transfer ownership of the unit to Bejarano or a company owned solely by Bejarano, and continuing to refuse to transfer ownership of the unit as directed by Bejarano.

69. As a result of Padron's breaches of his fiduciary duties owed to the Plaintiff, Plaintiff has been damaged in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Padron for damages and monies incident to equitable relief for breach of fiduciary duty, compensatory damages, plus pre- and post-judgment interest, court costs and attorneys' fees, and such other relief as the court may deem just and proper.

## COUNT VII-UNJUST ENRICHMENT
**(Regarding SLS Lux investment)**

70. Plaintiff re-allege and incorporate as if fully set forth herein paragraphs 1 through 9, 11, and 17 through 22 above.

71. This is an action against Padron for unjust enrichment.

72. Bejarano transferred almost $500,000.00 for the purchase of unit 1901 at the SLS Lux.

73. Using Bejarano's personal funds, Padron assisted the Plaintiff in connection with the purchase of the investment property at the SLS Lux. Specifically, Plaintiff transferred almost $500,000.00 to a title company for the sole purpose of purchase a unit at the SLS Lux, and Padron advised Bejarano that Unit 1901 would be acquired

initially in Padron's name so as to facilitate the process, and that ownership of the unit would later be transferred to a Florida limited liability company owned solely by Bejarano. After Bejarano demanded that Padron transfer ownership of the unit to a company solely-owned by Bejarano or, alternatively, to Bejarano individually, Padron refused to do so and also refuses to return the Plaintiff's investment for the purchase of the unit at the SLS Lux.

74. The Plaintiff conferred a benefit to Padron in that he was the source of the funds used to purchase the unit at the SLS Lux.

75. Padron has failed to transfer ownership of unit 1901 to Bejarano as promised.

76. Circumstances are such that it would be unjustifiable for Padron to retain ownership of unit 1901 and the Plaintiff's initial investment for the purchase of this investment property.

**WHEREFORE,** Plaintiff demands judgment against Padron for damages, plus pre- and post-judgment interest, reasonable attorneys' fees and costs incurred in this action, and such other relief as the court may deem just and proper.

### COUNT VIII – FRAUD
**(Regarding SLS Lux investment)**

77. Plaintiffs re-allege and incorporate as if fully set forth herein paragraphs 1 through 9, 11, and 17 through 22 above.

78. This is an action against Padron for fraud.

79. Acting as the Plaintiff's agent in connection with the purchase and maintenance of the investment property at the SLS Lux, Padron made misrepresentations to the Plaintiff concerning material facts or intentionally concealed material facts from the

Plaintiff. Specifically, Padron made misrepresentations regarding his services and intentions with the Plaintiff's acquisition of the investment property by representing that he would act as Plaintiff's agent and in the Plaintiff's best interest all the while knowing that he intended to take the investment property as his own.

80. Padron knew that his misrepresentations were false and omissions were material to Bejarano, and made the misrepresentations and omissions for the sole purpose to induce the Plaintiffs to transfer almost $500,000.00 to the Defendant for the purpose of purchase a unit at the SLS Lux.

81. Plaintiff relied on the misrepresentations of Padron, and had Plaintiff known of Padron's omissions would have never purchased the investment property, or trusted Padron to maintain the Investment Property.

82. As Plaintiff's agent, Plaintiff expected that Padron would disclose all material facts regarding the sale and ownership of the investment property.

83. As a result of Padron's fraud, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands judgment against Padron for damages, plus pre- and post- judgment interest, reasonable attorneys' fees and costs incurred in this action, and such other relief as the court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable.

Dated: this 18th day of July, 2018.

                                                Respectfully submitted,

                                                **GRAYROBINSON, P.A.**
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887
Email:  csouffront@gray-robinson.com


By: /s/ Carlos A. Souffront
     Carlos A. Souffront
     Florida Bar No.: 47775


\# 2843267 v1