UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-22891-CIV-SMITH

EUGEN BEJARANO SADER,

        Plaintiff,

vs.

JOSE M. PADRON,

        Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment [DE 94], Plaintiff's Response [DE 102], and Defendant's Reply [DE 109]. This suit arises out of a friendship and alleged business relationship between the parties. Plaintiff alleges that he relied on Defendant to help him make investments in the United States, specifically the purchase of a luxury condominium and a 50% ownership in a Honda dealership. However, when Plaintiff sought to have the title of those investments put in his name, Defendant refused. This suit followed. Plaintiff has brought claims of fraud, unjust enrichment, breach of fiduciary duty, and accounting relating to the two investments. Defendant has moved for summary judgment on all claims. In his response, Plaintiff concedes that he does not have claims for unjust enrichment. Consequently, summary judgment is granted as to these two claims. Summary judgment is denied as to the remaining claims because genuine issues of material fact exist as to the nature of the parties' relationship.

I.  **MATERIAL FACTS**[1]

Plaintiff is a citizen of Venezuela. From 2012 until 2018, Plaintiff resided in Miami, Florida. Plaintiff currently resides in the Dominican Republic. Defendant is a United States citizen who moved his family to Venezuela in 2007 and lived there until January 2014. Initially, Defendant sold motorcycles in Venezuela and then he started working for his father-in-law's engineering and construction company, Inversiones Isgure C.A., as a field supervisor.

Plaintiff met Defendant while Defendant was living in Venezuela and working for Inversiones Isgure C.A. The parties became quite friendly and Plaintiff began treating Defendant "as part of my family." (Sader Decl. [DE 100-1] ¶ 6.) According to Defendant, between 2013 and 2017, Plaintiff and Defendant engaged in approximately ten currency exchanges. (Padron Dep. [DE 92-1] 14-19.) Defendant, however, has no records of the exchanges and could not remember who the exchanges were for, other than himself. (*Id.*)

During the time the parties knew each other in Venezuela, Plaintiff was working as a consultant to the Venezuelan Ministry of Health's construction foundation. At the same time, Plaintiff also worked as a consultant for a private Venezuelan construction company and as a 30% owner of a Venezuelan corporation, Grupo Wintex, which owned 49 retail stores in Venezuela and one in Miami. Plaintiff created and incorporated Wintex US LLC, a Florida corporation, in 2013 and 2014 for the purpose of establishing Wintex's presence in the United States. Plaintiff's work for the private companies paid him millions of dollars which he deposited into the bank accounts of two shell corporations, Wade Partners LLC in the British Virgin Islands and Belel, Inc. in Panama, which were set up in 2012. Later, Plaintiff also established Brick Investments,

---

[1] Citations to facts that have been admitted by both sides have been omitted.

Ltd., a British Virgin Islands corporation. Plaintiff is the sole shareholder and owner of each of these corporations. (Sader Decl. ¶ 4.)

*Purchase of the Property*

According to Plaintiff, sometime in 2013, Plaintiff told Defendant that Plaintiff was interested in acquiring an apartment in South Florida as an investment. (Sader Decl. ¶ 17.) According to Plaintiff, Defendant told Plaintiff that Defendant could help Plaintiff because his father had a real estate brokerage and all his family members, including himself, were in the real estate business. (Sader Decl. ¶ 17.) Defendant further represented that he was a licensed real estate broker. (*Id.*) Plaintiff and Defendant looked at several properties together and met at Defendant's family's real estate office to discuss market analyses and real estate projects. (*Id.* ¶ 18.) After Plaintiff and Defendant would look at a property, Defendant would send Plaintiff price comparisons and would call Plaintiff to discuss which properties were the better investment. (Sader Dep. [DE 91-1 & -2] 337:8-22.)

According to Plaintiff, he decided to purchase Unit 1901 at the SLS Lux Brickell Residences (the Property). (*Id.* ¶ 19.) Plaintiff testified that once he decided to purchase the Property, Defendant told Plaintiff that it would be better if Defendant was listed as the buyer because he was American and it would look better and be safer for Plaintiff's investment. (*Id.*) Defendant further told Plaintiff that title to the Property would be in a limited liability company of which Defendant would be the manager and Plaintiff would be the sole owner. (*Id.*) After the sale was complete, Defendant would transfer the Property to Plaintiff or to a company that Plaintiff owned. (*Id.*) At the time of the signing of the purchase documents, Defendant told Plaintiff that his real estate license had expired so Defendant's brother-in-law, Luis Suarez, would be the real estate agent listed for the sale. (*Id.* ¶ 17; Sader Dep. 210:1-4; 213:20-214:5.)

In connection with the purchase of the Property, Plaintiff made five transfers -- three in 2014, one in 2015, and one in 2016 -- totaling $499,950.00 to Chicago Title, the escrow agent for the Property. (*Id.* ¶ 23.) The other half of the purchase price was paid through a mortgage obtained by Defendant. (Padron Dep. [DE 92-1] 37:24-38:6.) Defendant does not dispute that Plaintiff transferred the $499,950.00 that was used for the purchase of the Property; instead, he maintains that Plaintiff was not purchasing the Property but was transferring the money to Defendant as payment for an apartment in Caracas, Venezuela, which Plaintiff's father-in-law was purchasing from Defendant. (Padron Dep. 37:24-39:20; 41:24-43:23; 48:6-15.) Plaintiff testified that he never purchased an apartment in Caracas from anyone. (Sader Dep. 145:10-15.) Defendant testified that he was the sole purchaser of the Property. (Padron Dep. 35:2-14.) Luis Suarez testified that the Property was purchased by Defendant. (Suarez Dep. [DE 93-1] 27:9-13; 29:12-15.) The purchase of the Property was completed in March 2018, and Defendant retains title to the Property. (Sader Dep. 449:14-15.)

*The Honda Dealership*

According to Plaintiff, sometime in late 2012 or early 2013, Defendant raised the idea of Plaintiff and Defendant opening a Honda motorcycle dealership together. (Sader Decl. ¶ 8.) Defendant stated that he and Plaintiff would be 50/50 partners in the dealership. (*Id.*; Sader Dep. 155:23-156:23.) Defendant stated that he had the necessary experience because he had previously worked in a dealership in the United States and one in Venezuela. (Sader Decl. ¶ 8; Sader Dep. 156:10-23.) Defendant further told Plaintiff that he was going to use his mother's name and social security number to open the dealership because she had a better credit score and, after everything was done and the dealership was open, Defendant would put Plaintiff's name on the documents. (Sader Decl. ¶8; Sader Dep. 156:12-23; 442:8-14.) The amount of Plaintiff's investment was not

4

discussed and Plaintiff still does not know how much money it took to open the dealership. (Sader Dep. 158:9-10; 237:2-7.) No written agreement between Plaintiff and Defendant was ever made regarding the dealership. (Sader Dep. 158:5-8; 161:17-162:6.)

According to Plaintiff, he and Defendant continued to have conversations about starting the Honda dealership and spoke about the progress of the construction, obtaining permits, obtaining approval from Honda, and finding a property site on which to construct the dealership. (Sader Decl. ¶ 9.) On October 13, 2013, Plaintiff wired Defendant $300,000.00 and, on May 31, 2015, Plaintiff wired Defendant another $300,000.00, both of which Plaintiff testified were for the Honda dealership. (Sader Dep. 241:20-242:22.) In 2014, Plaintiff sold his Lamborghini and assigned to Defendant for the Honda dealership $200,000.00 from the sale. (Sader Dep. 244:7-14.) Defendant continued to ask Plaintiff for more money for the dealership. (Sader Dep. 251:3-11; 305:10-306:12.) In 2017, Plaintiff transferred $200,000.00 to the contractor who was building the dealership. (Sader Dep. 325:19.)

According to Defendant, these money transfers were not for the Honda dealership but were for debt Plaintiff owed Defendant arising from currency exchanges between Plaintiff and Defendant that had taken place when Defendant resided in Venezuela. (Padron Dep. 56:20-24; 69:4-13; 104:5-9.) Plaintiff denies that the parties ever engaged in currency exchanges with each other. (Sader Dep. 408: 13-15.) Plaintiff did not sign any of the loan documents for the loans related to the Honda dealership and was not part of the LLC that owned the dealership. (Sader Dep. 328:25-329:4.) Defendant has not turned over any ownership interest in the Honda dealership to Plaintiff. (Sader Dep. 449:16-18.)

*The Amended Complaint*

Plaintiff's seven count First Amended Complaint [DE 23] alleges the following claims: (1)

5

breach of fiduciary duty relating to the Honda dealership investment; (2) unjust enrichment relating to the Honda dealership investment; (3) fraud relating the Honda dealership investment; (4) accounting relating to the Honda dealership investment; (5) breach of fiduciary duty relating to the SLS Lux investment; (6) unjust enrichment relating to the SLS Lux investment; and (7) fraud relating to the SLS Lux investment. Count 7 was previously dismissed by Court order. Plaintiff now concedes that he does not have a claim for unjust enrichment. (DE 102 at 8.) Consequently, summary judgment is granted as to Counts 2 and 6.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see*

*also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III. DISCUSSION

Defendant moves for summary judgment on all remaining counts. As to Counts 1 and 5 for breach of fiduciary duty, Defendant argues that the record does not establish that a fiduciary relationship existed between Plaintiff and Defendant. As to Count 4 for fraud, Defendant contends that the record does not contain evidence sufficiently particular to prove fraud. While Defendant does not address Count 4 for an accounting, its viability rises and falls with the viability of Plaintiff's breach of fiduciary duty claims. As discussed below, genuine issues of material fact exist as to these claims. Therefore, the motion is denied as to Counts 1, 3, 4, and 5.

### A. Fiduciary Duty

Under Florida law, the elements of a claim of breach of fiduciary duty are: (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) the breach proximately caused the plaintiff's damages. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). Defendant argues that Plaintiff cannot establish the first element of the claim – the existence of a fiduciary duty.

The Florida Supreme Court, discussing the nature of a fiduciary relationship, has stated:

> If a relation of trust and confidence exists between the parties (that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused), that is sufficient as a predicate for relief. The origin of the confidence is immaterial.

*Gracey*, 837 So. 2d at 352 (quoting *Quinn v. Phipps*, 113 So. 419, 421 (Fla. 1927)). The Florida Supreme Court has further stated that "[a] fiduciary relation exists between two persons when

7

one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relation." *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002) (quoting *Restatement (Second) of Torts* § 874 cmt. a.) "A fiduciary relationship may be implied by law, and such relationships are 'premised upon the specific factual situation surrounding the transaction and the relationship of the parties.'" *Doe*, 814 So. 2d at 374 (quoting *Capital Bank v. MVB, Inc.,* 644 So.2d 515, 518 (Fla. 3d DCA 1994)). Thus, to "establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Watkins v. NCNB Nat. Bank of Fla., N.A.*, 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993) (quoting *Bankest Imports, Inc. v. Isca Corp.,* 717 F. Supp. 1537, 1541 (S.D. Fla. 1989)).

### i. *The Real Estate Investment*

Defendant argues that Plaintiff cannot establish that he was the weaker party who was dependent on Defendant regarding Plaintiff's investment in the SLS Lux. Defendant points to the following facts in relation to this real estate investment: Plaintiff was living in Miami at the time of the incidents alleged in the Amended Complaint, despite alleging that he was a resident of Venezuela at the time; Plaintiff was not a novice real estate investor; and Plaintiff is an experienced businessman, having worked in construction management, having been a part owner and director of Wintex Group, having been the incorporator and operator of Road Rage Tires in south Florida, and having incorporated approximately twelve corporations. Defendant also argues that the evidence indicates that Plaintiff did not rely on Defendant's real estate knowledge because Plaintiff used Luis Suarez, a licensed real estate agent, as his real estate agent, for other transactions. Further, Plaintiff is currently involved in numerous real estate development projects in the Dominican Republic.

In response, Plaintiff contends that an implied fiduciary relationship existed between Plaintiff and Defendant. Plaintiff maintains that Defendant repeatedly emphasized how he knew the south Florida real estate market and could help Plaintiff make the right investment decisions. Plaintiff further argues that Defendant was the one who suggested that Plaintiff put Defendant down as the buyer because he was an American and it would look better and be safer for Plaintiff's investment. According to Plaintiff, he trusted Defendant, followed his advice (including allowing Defendant to be listed as the purchaser of the Property) and believed that Defendant would transfer the Property to Plaintiff as Defendant had promised.

There is clearly conflicting evidence about the nature of the relationship between Plaintiff and Defendant. While Plaintiff claims that Defendant purchased the Property on Plaintiff's behalf, Defendant disputes this. If the parties did not intend Defendant to purchase the Property on behalf of Plaintiff, then no fiduciary relationship existed. However, if the parties did intend Defendant to purchase the Property on behalf of Plaintiff, then a question of fact exists as to whether a fiduciary relationship existed between the parties. Plaintiff testified that he relied on Defendant who held himself out as an expert in south Florida real estate and who advised Plaintiff on what properties would make the best investment. Plaintiff further testified that Defendant suggested that Plaintiff structure the purchase so that Defendant would be listed as the purchaser of the Property. These facts are sufficient to raise a genuine issue of a material fact as to whether Plaintiff depended on Defendant and whether Defendant undertook to advise, counsel, and protect Plaintiff. Thus, there is a genuine issue of material fact as to whether Plaintiff and Defendant had a fiduciary relationship. The fact that Plaintiff was also a sophisticated business person does not, by itself, prevent the establishment of a fiduciary relationship between the parties, as argued by Defendant. Consequently, summary judgment is denied as to Count 5.

### ii. *The Honda Dealership*

Defendant also argues that no fiduciary relationship existed between Plaintiff and Defendant with regard to the Honda dealership. Defendant argues that, in addition to the lack of evidence that Plaintiff was the weaker party whom Defendant undertook to advise, counsel, and protect, under Florida law, business partners are not each other's fiduciaries. In order for Defendant to prevail on the latter argument, Defendant would have to admit that he and Plaintiff were partners in the Honda dealership, which he has not done. Furthermore, contrary to Defendant's assertion, in Florida, partners do owe each other a fiduciary duty. *See Hallock v. Holiday Isle Resort & Marina, Inc.*, 885 So.2d 459, 462-63 (Fla. 3d DCA 2004) (citing Fla. Stat. § 620.8404(2), a section of Florida's Revised Uniform Partnership Act).

Again, there is conflicting evidence about the nature of the parties' relationship regarding the Honda dealership. Defendant claims there was no partnership and Plaintiff's payments were for past due debts incurred as a result of currency exchanges done while Plaintiff lived in Venezuela. Plaintiff claims that the parties agreed to be 50/50 owners in the dealership, that Defendant kept him apprised of the progress, that Defendant continued to ask for money for the dealership, and that Defendant stated that the dealership would initially be in his and his mother's name but he would add Plaintiff once the dealership was up and running. Clearly, there are genuine issues of material facts regarding the parties' relationship and understandings related to the dealership. Because there are issues of fact about the nature of the parties' relationship, there are issues of fact as to whether Plaintiff and Defendant had a fiduciary relationship in relation to the Honda dealership. Consequently, summary judgment is denied as to Count 1.

### B. Accounting

Defendant's motion does not address Plaintiff's accounting claim. However, had

Plaintiff's breach of fiduciary duty claims been dismissed, Plaintiff would have had no basis for seeking an accounting. *See Parliament Ins. Co. v. Hanson*, 676 F.2d 1069, 1072 (5th Cir. 1982) (explaining that an action for accounting requires a right to an accounting which, under Florida law, may arise from the existence of a trust or fiduciary relationship). Because Plaintiff's claims for breach of fiduciary duty survive summary judgment, Plaintiff's claim for an accounting also survives. Thus, summary judgment is denied as to Count 4.

    **C.**    **Fraud**

Citing to Federal Rule of Civil Procedure 9(b), Defendant argues that summary judgment on Plaintiff's fraud claim is required because the record evidence lacks the specificity and particularity required to prove fraud. Defendant argues that, because at the time Plaintiff and Defendant allegedly agreed to become 50/50 partners in the Honda dealership no details of the agreement were discussed, the evidence is insufficient to establish fraud. Plaintiff responds that Defendant is essentially arguing that Plaintiff's evidence must meet the Federal Rule of Civil Procedure 9(b) pleading standard and that Defendant has presented no authority to support his position that Plaintiff must meet the Rule 9(b) pleading standard at this point in the proceedings.

Defendant does not argue that Plaintiff has not or cannot present evidence to establish each of the elements of fraud. Defendant's argument relies entirely on the particularity standard of Rule 9(b), which is a pleading rule, not a proof rule. Defendant cites to no authority to support its proposition that Plaintiff's evidence must meet the particularity requirement of Rule 9(b). The burden is on the Defendant, as the moving party, to show that there is no genuine issue of material fact as to Plaintiff's claim and Defendant has failed to do so. Consequently, summary judgment is denied as to Count 3.

Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment [DE 94] is **GRANTED in part and DENIED in part:**

a) Summary judgment is **GRANTED** as to Counts 2 and 6 for unjust enrichment. Counts 2 and 6 are **DISMISSED with prejudice.**

b) Summary Judgment is **DENIED** as to all other counts.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 21st day of November, 2019.

_____
**RODNEY SMITH**
**UNITED STATES DISTRICT JUDGE**

cc:   All Counsel of Record